**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**LISA MAGEE WILLIAMS**                                                             **PLAINTIFF**

**v.**                                             **CIVIL ACTION NO. 2:17-cv-00087-KS-MTP**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security**                                 **DEFENDANT**

## REPORT & RECOMMENDATION

Plaintiff Lisa Magee Williams brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security Administration denying her claim for disability insurance benefits. The matter is now before the Court on the Defendant's Motion to Affirm the Commissioner's Decision [10]. Having considered the pleadings, the record, and the applicable law, the undersigned recommends that the Defendant's Motion to Affirm the Commissioner's Decision [10] be GRANTED, the Commissioner's final decision should be AFFIRMED, and this action be DISMISSED.

## PROCEDURAL HISTORY

On October 14, 2013, Plaintiff applied for disability insurance benefits alleging she had been disabled since October 10, 2013, due to depression, anxiety, hypertension, vitamin D deficiency, back problems, low magnesium, and severe anxiety. *See* (Administrative Record [6] at 82-83, 97-98.) The Social Security Administration denied Williams' application, and she requested a hearing before an ALJ, which was held on February 23, 2016. *See* ([6] at 58, 110-13, 118-23.) On June 24, 2016, the ALJ issued a decision finding that she was not disabled. ([6] at 13-40.) The Appeals Council denied her request for review, *id.* at 6-12, and this appeal followed.

## WORK HISTORY

Plaintiff was forty-one years old on the alleged onset date of October 10, 2013 and forty-three years old at the time of the hearing. ([6] at 82.) She reported obtaining a bachelor's degree in music education, a master's degree in secondary education and that she worked as a school teacher. ([6] at, 32, 64, 93, 107, 156.) At the time of the hearing, she worked as the Minister of Music at her church, making $500 a month, and she played the piano at the Church the Sunday before the hearing with the ALJ. ([6] at 65, 156.)

The Court has determined that a detailed recitation of the medical records is not necessary because the ALJ provided a sufficient summary in the decision.

## HEARING AND DECISION

In the June 24, 2016 decision, the ALJ evaluated Plaintiff's impairments using the familiar sequential evaluation process.[1] The ALJ found that while the Plaintiff worked after the alleged disability onset date, she had not engaged in substantial gainful activity since her alleged onset date, and had the severe impairments of obesity, back pain, depression, anxiety, and carpal-

---

[1] In evaluating a disability claim, the ALJ engages in a five-step sequential process, making the following determinations:
  (1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
  (2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
  (3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled)
  (4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and
  (5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

2

tunnel syndrome. *See* ([6] at 18-19.) The ALJ also considered the combined effect of these impairments and determined that they did not, singly or in combination, meet or medically equal the criteria for any listed impairment. ([6] at 20.) After considering the record, the ALJ found that Williams has the residual functional capacity ("RFC") to perform sedentary work with some additional limitations. ([6] at 23.) The ALJ found that Willams was unable to perform her past relevant work as a school teacher, but based on her RFC, a significant number of jobs in the national economy existed that Plaintiff could perform, and thus she was not disabled. ([6] at 32-34.)

## STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckl*er, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). If the Commissioner's decision is supported by the evidence, and the proper legal standards are applied, the decision is conclusive and must be upheld by this Court. *Paul v.*

*Shalala*, 29 F.3d 208, 210 (5th Cir. 1994*), overruled on other grounds, Sims v. Apfel*, 530 U.S. 103 (2000).

## DISCUSSION OF ALLEGED ERRORS AND APPLICABLE LAW

Plaintiff argues that the ALJ did not properly evaluate the listings, specifically Listing 1.04A. She also argues that the RFC is not supported by substantial evidence, and that the ALJ failed to comply with SSR 00-4p.

**Whether the ALJ Failed to Properly Evaluate Listing 1.04A**

The Plaintiff avers that the ALJ did not properly evaluate and consider Listing 1.04A at Step Three, and maintains that the ALJ erred by not finding that her impairments meet or equal Listing 1.04A.

As evidenced by her opinion, in reaching her conclusion regarding the listings, the ALJ specifically considered Listing 1.04:

> In reaching this conclusion, the undersigned considered listing 1.04 governing disorders of the spine. The medical evidence of record does not document any spinal abnormalities necessary to meet the requirements of Section 1.04 of the Listings, governing disorders of the spine. There is no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight-leg raising test; spinal arachnoiditis; or lumbar spinal stenosis resulting mpseudoclaudication with inability to ambulate effectively, as required by section 1.04.

([6] at 20).

**Listing 1.04A** describes "[d]isorders of the spine," in relevant part, as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With ... [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

4

Listing 1.04A.

      Plaintiff complains that the ALJ simply tracked the language of Listing 1.04 without discussing relevant evidence. However, the ALJ is not required "to do an exhaustive point-by-point discussion" of the listings. *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007). She also discussed evidence relevant to this listing, in part, in her RFC analysis.  However, even if there was error in not going into more detail in the listing section of her opinion, the Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . . The major policy underlying the harmless error rule is to preserve judgments and to avoid waste of time." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)) (per curiam). "[P]rocedural improprieties . . . will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir.2011) (emphasis added); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). The ALJ's error is harmless if the substantial rights of a party have not been affected. *See Alexander*, 412 F. App's at 722; *see also Audler*, 501 F.3d at 448 (applying harmless error analysis to the ALJ's failure to state any reason for her adverse determination at step three).

      The Commissioner acknowledges that Plaintiff has a disorder of the spine, degenerative disc disease, but argues that the record does not reflect evidence to support nerve root compression for a continuous twelve months. Plaintiff suggests she experienced each of the five requirements necessary to show nerve root compression. ([9] at 38-40.) While Plaintiff did meet some of the requirements at different times, the record does not demonstrate she continuously met all of the five requirements for the listing for a continuous twelve months.

The applicable regulation states that the Social Security Administration will find that a claimant's impairment meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 404.1525(c)(3). The Social Security Act defines disability as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A). If a claimant is unable to establish that the impairment existed for the requisite period of twelve months, he cannot carry his burden of meeting the requirements of the relevant listing. *Carrillo v. Astrue*, No. CIV.A.SA-09-CA-44-XR, 2010 WL 2136438, at *6 (W.D. Tex. May 26, 2010).

The record shows multiple years of full motor strength and normal muscle tone and bulk in all four of Plaintiffs extremities. The ALJ also observed in her RFC determination that Plaintiff's symptoms in 2013 "were generally normal, with some episodes of low back pain, but that she was using Flexeril which provided relief and denied current muscle pain, joint swelling, or restriction of motion, [and] she did not complain of upper extremity pain, including hand pain." ([6] at 25.)

The ALJ also noted that "[s]he had normal spinal curvature, full range of motion without tenderness, deformities, clicking, or laxity of joints. She had adequate muscle tone and strength in all extremities[,and s]he could ambulate without assistance." ([6] at 26.) She also noted that "X-rays of her cervical spine performed on May 6, 2013 revealed only mild degenerative changes." ([6] at 27.)

Plaintiff's medical records also support the decision. On January 14, 2014, Plaintiff exhibited "decreased range of motion and tenderness" in her back and it was revealed she had a

6

left paracentral disc herniation at L5-Sl, but her motor exam displayed normal muscle bulk and tone and she displayed 5 out of 5 strength throughout. During this visit, Plaintiff was advised to diligently work on weight reduction to decrease strain on her spine. The ALJ discussed this visit in her RFC analysis. ([6] at 27, 1478-1480.)

On April 17, 2014, she exhibited tenderness, but had normal range of motion. ([6] at 1501.) In May of 2014, Plaintiff had "full strength in all major muscle groups," a normal range of motion, and a negative straight leg raise. ([6] at 1517.) In September of 2014, notes indicated she had no back pain, no muscle pain, no joint pain, and "normal" musculoskeletal strength. ([6] at 915, 928.) In February of 2015 her motor strength was rated 5 out of 5. ([6] at 614.) In November 2015, medical notes also indicated that her motor activity was "non-remarkable." ([6] at 776.) In January of 2016, medical documentation show that her motor activity was "non-remarkable." ([6] at 955-956, 964.)

Though some pieces of medical evidence show that Plaintiff sometimes experienced symptoms required to meet the listing, as indicated above there is also evidence that Plaintiff sometimes did not. There is sufficient evidence to conclude that even if some symptoms that apply to Listing 1.04A were met at certain points, they did not exist for a 12–month period. *Black v. Astrue*, Civ. A. No. 2:08cv392, 2009 WL 3617283 (S.D.Ind. Oct. 28, 2009); *Carrillo v. Astrue*, No. CIV.A.SA-09-CA-44-XR, 2010 WL 2136438, at *6 (W.D. Tex. May 26, 2010). As there is substantial evidence to support the ALJ's determination regarding the listings, this issue is without merit.

**Whether the ALJ's RFC finding is Supported by Substantial Evidence**

"Residual Functional Capacity" is defined in the Regulations as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in

7

a work setting. 20 C.F.R. § 416.945. The ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform sedentary work. . . except that she is limited to simple, routine tasks; only occasional interaction with the public or coworkers; and she can frequently but not constantly handle or finger objects.

([6] at 23.)

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Specifically, she argues that the ALJ erred in her RFC determination based on *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), by failing to "develop the record fully and fairly" because "there was no medical testimony supporting [the] conclusion." *See* ([9] at 41.) Plaintiff claims the ALJ did not attempt to obtain an opinion from a treating source or obtain a functional capacity review referenced in the ALJ's decision, or arrange a consultative examination to evaluate functional limitations attributable to the Plaintiff's physical impairments. *Id.* at 32.

An ALJ's residual functional capacity determination is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). "An RFC assessment, as opposed to a medical source statement, is an administrative finding of fact." *Bellanger v. Astrue*, No. 11-00634, 2012 WL 4210298, at *12 (E.D. La., Aug. 10, 2012) (citing Social Security Ruling 96–8p, 1996 WL 374184 at *2 n. 4). It is not a medical opinion. While an ALJ should typically request a medical source statement that describes the types of work that the claimant is still capable of performing, the Fifth Circuit has held that "the absence of such a statement does not, in and of itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *see also Joseph-Jack v. Barnhart*, 80 Fed.App'x. 317, 318 (5th Cir. 2003) (rejecting the argument that "because the record was devoid

of a residual functional capacity (RFC) assessment by a medical source, the ALJ was not competent to assess her RFC"); *Onishea v. Barnhart*, 116 Fed.Appx. 1, 2004 WL 1588294 (5th Cir. July 16, 2004) (ALJ may rely on a state examiner's function-by-function assessment of a claimant's exertional limitations when determining residual functional capacity); *Zeno v. Barnhart*, No. 1:03cv649, 2005 WL 588223, at *9 (E.D.Tex. Feb. 4, 2005) (ALJ may rely on state examiner's RFC assessment); *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 804 (E.D. Tex. 2006) ("*Ripley* cannot be fairly viewed as establishing a rule that *only* treating physicians may provide the required "medical source statement.")

Here, the ALJ considered the opinion evidence of state examiners Dr. Jogendra Singh and Dr. Prosser. Dr. Singh opined about Plaintiff's physical limitations, and Dr. Prosser opined about her psychological limitations. *See* ([6] at 31.) The ALJ considered those opinions when determining her RFC determination. *Id.* Dr. Jogendra Singh, M.D. opined that Plaintiff retained the ability to perform light work. ([6] at 89-90).

Plaintiff argues that her condition deteriorated after Dr. Singh reviewed the evidence and rendered an opinion, and that the ALJ should have ordered another opinion to reflect her later condition. ([9] at 44.). Examinations subsequent to Dr. Singh's opinion reveal normal range of motion in her spine, normal tandem gait, 5/5 strength throughout, intact motor and sensory function in lower extremities, no tenderness, alertness, full orientation, and symmetrical deep tendon reflexes. ([6] at 614, 915, 1517, 1549).

The ALJ's duty to obtain a consultative examination is triggered only when the evidence is insufficient to make an informed decision. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The duty is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the

evaluation process. *Brock*, 84 F.3d at 728; *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). To trigger the need for a consultative examination, "[t]here must be insufficient evidence to make an informed determination, ***not a favorable one***." *Cox v. Berryhill*, No. 1:16CV77 LRA, 2017 WL 5054282, at *5 (S.D. Miss. Sept. 27, 2017) (emphasis added); *Oderbert v. Barnhart*, 413 F. Supp. 2d 800, 805 (E.D. Tex. 2006). As demonstrated by the voluminous record, the ALJ had ample evidence to make an informed decision, and there is substantial evidence to support her RFC determination. This issue is without merit.

**Whether the ALJ properly resolved any conflicts between the VE's testimony and the Dictionary of Occupational Titles (DOT) or failed to comply with SSR 00-4p.**

Plaintiff argues that the ALJ did not properly reconcile the vocational expert's testimony regarding exertional level when it conflicted with information incorporated into the Dictionary of Occupational Titles ("DOT"). *See* ([9] at 50-55.)

Where there is a conflict between the VE's testimony and the DOT, the Fifth Circuit has adopted a "middle ground" approach under which the ALJ's discretion to choose between conflicting evidence is not unfettered. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir.2000); *see Nally v. Astrue*, No. 3–10–CV–1631–BD, 2011 WL 3844107, at *4 (N.D.Tex. Aug.29, 2011) (stating that the Fifth Circuit has "adopted a 'middle ground' approach which allows the ALJ to rely on vocational expert testimony if the record reflects an adequate basis or a reasonable explanation for deviating from the DOT").

Because this type of conflict surfaces frequently, the Commissioner issued SSR 00–4p to ensure that ALJs would expose and reconcile such conflicts before relying on VE testimony. SSR 00–4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). The ruling, which unambiguously

establishes the ALJ's affirmative duty to bring to light and explain any "apparent unresolved conflict" between the VE's testimony and the DOT states the following:

> When a VE ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and information provided in the DOT. In these situations, the adjudicator will:
>
>> Ask the VE ... if the evidence he or she has provided conflicts with information provided in the DOT; and
>>
>> If the VE's ... evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00–4p, 2000 WL 1898704, at *2, 4 (S.S.A. Dec. 4, 2000). When there is a conflict, neither the DOT nor the VE evidence automatically "trumps" the other. *Id.* at *4. The conflict must be resolved by determining whether the VE's explanation is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.* The ALJ must explain in his decision how any conflict that has been identified was resolved. *Id.*

SSRs represent "statements of policy and interpretations" adopted by the Social Security Administration that are "binding on all components" of the Administration. 20 C.F.R. § 402.35(b)(1). While binding on the Administration, these interpretive rulings are not binding on the courts, so courts need not give them the force and effect of law. *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977) (noting the varying degrees of deference the rulings may be afforded); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir.2001) (per curiam). However, courts may, as the Fifth Circuit frequently has, "rel[y] upon the rulings in evaluating ALJs' decisions." *Myers*, 238 F.3d at 620.

Here, the ALJ and the VE explicitly discussed the conflicts as required by SSR 00–4p:

> ALJ: And past relevant work as you classified the Claimant to have. I want you to further consider this individual limited to performing only sedentary work, but

11

with a consideration – excuse me, that she's limited performing only simple, routine tasks, and she should have no more than occasional interaction with coworkers or the public. Now, would there be occupations existing in the economy that such an individual could perform?

VE: Yes, ma'am.

ALJ: Would you give me some examples.

VE: That hypothetical, so in fact there would be. Just one moment. There would be-a job such as a small parts assembler, 739.687-030, sedentary, unskilled, 2, in excess of 7,500 in the national economy. A bench assembler, 706.684-022, sedentary, unskilled, 2, in excess of 10,000 in the national economy. Third is an electronics worker, 726.687-010, sedentary, unskilled, 2, in excess of 5,000 in the national economy. **These three job titles and DOT numbers are listed in the DOT at light. I'm familiar with the titles and the numbers which I've testified this morning at sedentary based on my experience as a vocational consultant in private practice providing job placement, labor market surveys, and extensive job analysis in the industry.**

ALJ: **Okay, now I want to make sure, I want to clarify this, that when you say they existed at sedentary, even though classified in the DOT as light, the person performing these jobs in this number of jobs that you have given would be not -- would not be required to exert more than sedentary exertional –**

**VE: Yes, ma'am - -**

ALJ:  - **-limits?**

**VE:  - -that's correct.**

ALJ: Okay, I just wanted to clarify that. Okay, now, if this individual were further limited in that they could frequently but not constantly use the hands for fine -- to handle or finger objects, would that change your answer?

VE: It would reduce the number of small parts job by 50%. The DOT notes that small parts would have -- require constant manipulation, however, that's not been my experience in doing industrial work. So I think it would be a change in the DOT and the impact would be to reduce those numbers.

ALJ: Okay. What about the bench assembler or electronics worker?

VE: It wouldn't reduce those at all.

ALJ: Okay. Okay, but I limited this individual to occasional but not frequent?

> VE: There would no competitive work.
>
> ALJ: Okay, that's what - - I knew that that would affect sedentary work, particularly.
>
> VE: Yes, ma'am.
>
> ALJ: Okay. Without having seen those studies that are still outstanding, I'm not -- that's the reason I'm asking more than one hypo there.
>
> ALJ: Okay, now, Ms. Finch, do you have any questions for Mr. Woodall?
>
> ATTY: No, ma'am.
>
> ALJ: **Okay, now, Mr. Woodall, I heard your explanation as it relates to your reduction in the number of jobs and the other ones existing, you know, the jobs that you named being -- existing and the numbers given at sedentary exertional demand. Now, otherwise was the testimony that you gave in this matter consistent with information found in the Dictionary of Occupational Titles and the Selected Characteristics of Occupations?**
>
> **VE: Yes, ma'am.**
>
> ALJ: Okay. Anything else, Ms. Finch?
>
> ATTY: No, ma'am.

(*See* Transcript of Hearing [6] at 78-81 (bold added)).

It is apparent from the transcript that the ALJ acknowledged the conflict at the hearing and had the VE confirm that even though the jobs are listed as light in the DOT, the jobs the VE identified would involve sedentary work. She also obtained a reasonable explanation that based on the VE's expertise and experience that those jobs were performed at that lower level. With this information, the ALJ found in her opinion that:

> The vocational expert testified that each of the occupations identified is classified by the Dictionary of Occupational Titles as light in exertional demand. The expert provided an explanation as to his knowledge that the named occupations are available as work which is sedentary in exertional demand, in the numbers provided. The expert also provided a basis of his knowledge as to the reduction in the number of jobs in the small parts assembler occupations, given the manipulative limitations contained in the hypothetical. To the extent this

13

> constitutes a "conflict" with information found in the Dictionary of Occupational Titles, the undersigned finds the vocational expert's explanation as to the basis of his knowledge sufficient. Otherwise, pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

([6] at 34.)

Based on the testimony and above opinion, the ALJ fulfilled her obligations under SSR 00-4p to address vocational expert's testimony regarding exertional level when it conflicted with the Dictionary of Occupational Titles. This issue is without merit and the decision of the Commissioner should be affirmed.

## Recommendation

Based on the foregoing the undersigned recommends that:

1. The Motion [10] to Affirm the Commissioner's Decision be GRANTED;
2. The Commissioner's final decision be AFFIRMED,
3. This action be DISMISSED with prejudice.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed

findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    THIS, the 3rd day of August, 2018.

s/ Michael T. Parker
United States Magistrate Judge
